**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARCOS TRUJILLO a/k/a MARCUS
TRUJILLO,

   Plaintiff,

  v.             Civ. No. 20-792 SCY/JFR

CENTRAL NEW MEXICO CORRECTIONAL
FACILITY, NEW MEXICO CORRECTIONS
DEPARTMENT, CORRECTIONS OFFICERS/
EMPLOYEES ANGEL SALAZAR, SAMUEL
LUJAN, CRAIG COAL, and VICTOR TURNER,

   Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS**[1]

   Plaintiff alleges that he was released from prison five months later than he should have

been. He brings federal constitutional claims as well as a variety of state-law claims for

negligence, assault, and battery. Defendants Central New Mexico Correctional Facility, New

Mexico Corrections Department, Angel Salazar, Samuel Lujan, and Craig Coal move to dismiss

all the claims in Plaintiff's Amended Complaint, arguing that Plaintiff had no constitutionally

protected interest in being released from prison without the existence of an approved parole plan

and Plaintiff's acceptance and agreement to such a plan. The Court agrees that, if there is one,

the constitutionally protected liberty interest created by New Mexico law relates to duties and

actions of the parole board. And Plaintiff does not state sufficient allegations in the Amended

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all
proceedings and to enter an order of judgment. Docs. 8, 10, 15, 45, 57.

Complaint to establish that the Corrections Department or its officers have any responsibility for decisions, errors, or omissions of the parole board related to Plaintiff's release on parole. State law does not require Defendants (who are not members of the parole board) to release inmates as soon as they are eligible for parole but before the parole board has completed its statutorily required actions. Therefore, Defendants did not necessarily violate the federal constitution simply by failing to release Plaintiff as soon as he became eligible for parole. Moreover, Plaintiff fails to cite any law showing that the individual defendants violated his clearly established constitutional liberty or due process rights.

The Court further finds that corrections department officers, at the time of the relevant events, were not "law enforcement officers" for purposes of the New Mexico Tort Claims Act ("NMTCA") and that Plaintiff identifies no other relevant waiver of sovereign immunity that would govern these claims. In addition, the Court finds the Amended Complaint does not state a claim under federal law against the state entity defendants, Central New Mexico Correctional Facility and New Mexico Corrections Department. The Court therefore grants in full Defendants' Motion to Dismiss (Doc. 42). But the Court does not dismiss claims the Defendants did not address in their motion: the federal-law claims in Count 2, or any claims brought against Victor Turner, who did not file a motion to dismiss.[2] Because Defendants did not move to dismiss them, these claims remain viable.

---

[2] The Court's use of the term "Defendants" in this Opinion refers to the moving Defendants, and does not include Victor Turner, who did not join in the present Motion to Dismiss. Officer Turner had not yet been served when the other Defendants filed their motion to dismiss, Doc. 42 at 1 n.1, and he did not file a notice of joinder in the motion. He filed an Answer to the Amended Complaint, Doc. 55, rather than a motion to dismiss that addressed claims unique to him, such as the alleged actions on January 29, 2019. *E.g.*, Doc. 34 ¶¶ 48-49.

## BACKGROUND

Plaintiff originally filed his complaint in state court on June 11, 2020. Doc. 1-2. On August 6, 2020, Defendants removed the case to federal court, asserting federal-question jurisdiction and supplemental jurisdiction. Doc. 1. Defendants moved to dismiss the complaint, Doc. 7, and the Court granted the motion in part and denied it as moot in part, permitting Plaintiff the opportunity to file an amended complaint that restates his federal claims. Doc. 32. Plaintiff filed the Amended Complaint on January 13, 2021. Doc. 34. Defendants filed a motion to dismiss the Amended Complaint, which is fully briefed and ready for decision. Doc. 42.

In the Amended Complaint, Plaintiff alleges he was incarcerated at Central New Mexico Correctional Facility until June 12, 2018. Doc. 34 ¶ 1. The New Mexico Corrections Department is a state agency that operates prisons in New Mexico. *Id.* ¶ 4. Count 1 of the Amended Complaint alleges "false imprisonment and or failure to timely discharge in violation of Plaintiff's state and US constitutuion [sic] rights." *Id.* at 3. Plaintiff alleges he did not get the credit for pre-sentence confinement he was entitled to, resulting in a release date of June 12, 2018. *Id.* ¶¶ 19-25. Plaintiff asserts he should have been released on January 16, 2018. *Id.* ¶ 25.

In Count 2, Plaintiff brings claims for assault and battery against "Defendant NMCD and NMCD Officers." *Id.* at 6. According to the Amended Complaint, Plaintiff was at home, having been released from prison, when officers believed to be SWAT "arrived at Plaintiff's house and threw Plaintiff to the ground and handcuffed him" in violation of the Fourth Amendment. *Id.* ¶ 36. "Mr. Trujillo believes there were several officers present from DOC." *Id.* ¶ 39. "When Plaintiff asked why he was being detained and what was going on, he was told there were allegations of a person down the road discharging a weapon." *Id.* ¶ 40. Plaintiff also alleges that defendant correctional officers harassed him at his place of employment and searched his

belongings without permission. *Id.* ¶¶ 48-49.

Count 3 brings a claim for negligence. *Id.* at 8-9. Plaintiff alleges that Defendants were negligent in "fail[ing] to provide Plaintiff with [the] adequate standard of care and duty owed to inmates in New Mexico." *Id.* ¶ 55. Count 4 brings a negligent hiring, training, and supervision claim. *Id.* at 9-12. Count 5 is titled "damages" and alleges that Defendants "failed to [provide] Plaintiff with adequate services while in custody to ensure he was timely released, and inadequate supervision upon his release" and caused Plaintiff damages. *Id.* ¶¶ 69-72.

## **STANDARD OF REVIEW**

A.   <u>The Court Will Treat The Motion As A Motion To Dismiss And Not A Request For Summary Judgment.</u>

The motion before the Court is titled a motion to dismiss for failure to state a claim "or" a motion for summary judgment. Doc. 42 at 1. Defendants presumably proceeded in this fashion because they rely on matters outside the pleadings. *Id.* at 4-5. Defendants acknowledge that motions to dismiss can be converted into motions for summary judgment if the movant relies on matters outside the pleadings. *Id.* at 5. Neither Defendants nor Plaintiff makes substantive arguments as to whether the Court should treat the motion as a motion to dismiss or a motion for summary judgment.

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

> There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice.

*Id*. (citations and internal quotation marks omitted). "If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving

proper notice to the parties." *Id.* (citing Fed. R. Civ. P. 12(d)). A court has broad discretion under Rule 12(d) to refuse to accept the extra-pleading materials and resolve the motion solely on the basis of the pleading itself. *See Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Here, Defendants ask the Court to rely on evidence outside the Amended Complaint: the terms of Plaintiff's January 5, 2018 Judgment and Sentence and May 11, 2018 Judgment and Sentence, under which he claims an entitlement to be released in January 2018. Doc. 42 at 5; Docs. 42-1 & 42-2. The Court finds that that these documents satisfy both exceptions (2) and (3) as described above, either one of which would be sufficient on its own. Although the complaint does not use the phrase "incorporated by reference," the documents are referred to in the Amended Complaint, they are central to Plaintiff's claim, and the parties do not dispute their authenticity. Doc. 34 ¶¶ 21-23 (allegations referring to both Judgments and Sentence); *cf.* Doc. 42 at 2; Doc. 46 at 10 (discussing the documents without disputing their authenticity); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

In addition, the Court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *see also United States v. Thrasher*, 816 F. App'x 253, 259 (10th Cir. 2020) (taking judicial notice of documents reflecting the Judgment and Sentence from Oklahoma state criminal court). As in *Thrasher*, the documentation on Plaintiff's Judgment and Sentence reflect

judicial proceedings in other courts and have a direct relation to the matter at hand.

The Court will rely on the documents attached to the motion to dismiss without converting it into a motion for summary judgment.

B.      Standard for motions to dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc*., 727 F.3d 1273, 1280 (10th Cir. 2013).

C.      Qualified immunity law

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When an individual defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must show that 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both to avoid qualified immunity, *Olsen*, 312 F.3d at 1304.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation marks omitted).

The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). "In order for a law to be clearly established, there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Moore v.*

*Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (internal quotation marks omitted). If no controlling authority is on point, the plaintiff must identify "a robust consensus of cases of persuasive authority." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (internal quotation marks omitted); *Quinn*, 780 F.3d at 1013. The plaintiff "does not need to find a case with an identical factual situation." *Moore*, 438 F.3d at 1042. But the correspondence between settled law and the present case must be "substantial." *Quinn*, 780 F.3d at 1014.

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citations omitted). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments" and protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

## DISCUSSION

## I.   The Individual Defendants Are Entitled To Qualified Immunity On Plaintiff's Federal-Law Claim For Delayed Release From Prison.

The Judgment and Sentence entered January 5, 2018, reflects that Marcos Trujillo (plaintiff in this case, but defendant in his criminal case) was sentenced on December 21, 2017 to a total term of 18 months. Doc. 42-1 at 1-2. The sentence consisted of 8 months' imprisonment, 1 year suspended sentence, 1 year of parole, and no probation. *Id.* at 3. It states: "Defendant, if imprisoned at any time in the New Mexico Corrections Department, shall be placed on parole for

l year(s) after release and be required to pay parole costs." *Id.* A second Judgment and Sentence was entered on May 11, 2018. Doc. 42-2. The only substantive change was to recognize that the sentence was to run concurrent with existing charges. *Id.* at 3. Plaintiff alleges in the Amended Complaint he served presentence time of 218 days, which left 26 days remaining from December 21, 2017. Doc. 34 ¶ 24. Therefore, Plaintiff's term of imprisonment ran on January 16, 2018. *Id.* ¶ 25. But Plaintiff remained in custody until on or about June 12, 2018. *Id.*

Individual defendants Angel Salazar, Samuel Lujan, and Craig Coal move to dismiss the federal constitutional claims against them in Count 1 on the basis of qualified immunity. They argue that Plaintiff finishing his term of imprisonment in January 2018 merely meant that he was *eligible* to be released on parole, rather than *entitled* to be released. Doc. 42 at 5 ("under New Mexico law, service of the minimum sentence merely fixes the date upon which Plaintiff became eligible for parole"). Eligibility for parole does not equate to a right to release on parole. *Id.* at 6-7. Defendants argue that because Plaintiff has no liberty interest in being released from confinement when his term of parole begins, he cannot succeed in bringing any constitutional claims for deprivation of his liberty interest.[3]

The Defendants' assertion of qualified immunity shifts the burden to Plaintiff to show 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1304 (10th Cir. 2002). The assertion of qualified

---

[3] Plaintiff invokes the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, and the Fourteenth Amendment. Doc. 34 ¶¶ 10, 26, 27, 31. The Fourth Amendment protects against unreasonable search and seizures and the Court does not see how it governs Plaintiff's claim to deprivation of liberty. Because Plaintiff was imprisoned by the state and not the federal government, the Fifth Amendment does not apply. Regardless of whether the Eighth Amendment or the Fourteenth Amendment governs here, the analysis is the same: Plaintiff claims a liberty interest in being released when his term of parole began.

immunity also means that "the *plaintiff* bears the burden of citing to [the Court] what he thinks constitutes clearly established law." *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) (internal quotation marks and alteration omitted). The Tenth Circuit has emphasized this burden in a variety of circumstances. *See Cox v. Glanz*, 800 F.3d 1231, 1245-46 (10th Cir. 2015) (by mere assertion of the qualified immunity defense, the law enforcement officers shifted the burden to the plaintiff to rebut both prongs of the qualified immunity test); *Cummings v. Dean*, 913 F.3d 1227, 1243 (10th Cir. 2019) ("Given that Plaintiffs bear the burden of presenting such a case to overcome qualified immunity, this failure proves fatal to their position." (citation omitted)); *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019) (by failing to argue "that the officer[s'] conduct was so obviously unconstitutional that it is not necessary for the plaintiff[s] to show clearly established existing law prohibiting such conduct," the plaintiff forfeited any such argument).

Plaintiff does not meet the burden either prong of the qualified immunity imposes. Plaintiff acknowledges that "there is no constitutional right to parole" unless "it is a protected liberty interest created by the statutes governing parole in a given jurisdiction." Doc. 46 at 10. Yet, Plaintiff does not even cite the statute supposedly creating this interest in New Mexico, either in his briefing or his Amended Complaint. Plaintiff argues that "Plaintiff's claim is not with the period of parole, but the additional time falsely imprisoned prior to parole." *Id.* Plaintiff's assertion that a prisoner's parole cannot begin until he is released from custody is inconsistent with the relevant statute Defendants identify, NMSA § 31-21-10(E).

This subsection explicitly states that an inmate who is sentenced to a term of incarceration and period of parole is *not* entitled to release immediately upon completion of his sentence of incarceration. Instead, before the inmate can be released, the parole "board shall

furnish to each inmate as a prerequisite to release under its supervision a written statement of the conditions of parole . . . and shall also require as a prerequisite to release the submission and approval of a parole plan." *Id*. An inmate who does not have a parole plan or who refuses to sign the written statement of conditions of parole "shall not be released and shall remain in the custody of the institution in which the inmate has served the inmate's sentence." *Id*. Here, even assuming the parole board violated its statutory duty to prepare a parole plan, Plaintiff makes no allegation that the individual Defendants (not alleged to be part of the parole board) violated any duty to prepare a parole plan. Nor does Plaintiff allege that he signed a written statement of conditions of parole. Without a parole plan or a signature on a written statement of conditions of parole, NMSA § 31-21-10(E) *requires* an inmate to be kept in custody. Plaintiff offers no theory as to how Defendants could legally release him in the absence of a parole plan or his signature on a written statement of conditions of parole.

In addition, NMSA § 31-21-10(E) makes clear that when an inmate completes his term of imprisonment and then remains confined, his continued confinement is part of his parole. This is because an inmate's time in custody after completing a sentence of imprisonment is credited toward his parole time. *Id*. If the inmate remains in custody for the entire parole term, "the inmate shall be released from that institution without parole." *Id*. And, if the inmate only spends part of his parole period in custody after his term of imprisonment expires, that additional time in custody "shall reduce the period, if any, to be served under parole at a later date." *Id*. In other words, contrary to Plaintiff's position, we know from NMSA § 31-21-10(E) that an inmate's parole begins when he completes his term of imprisonment but nonetheless remains in custody. We also know that NMSA § 31-21-10(E) sets forth prerequisite conditions to the release of a prisoner who served his sentence of imprisonment but not his sentence of parole. Plaintiff's

failure to allege those prerequisite conditions occurred in his case is fatal to his section 1983 action.

Nor does Plaintiff's assertion that the Judgment and Sentence created an "absolute right of release and a date certain for release" that "was not contingent on his eligibility for parole" change this result. Doc. 46 at 11. Plaintiff fails to point to any language on the Judgment and Sentence that would alter what is plainly set forth in NMSA § 31-21-10. As explained above, NMSA § 31-21-10 did not allow for Plaintiff's release in the absence of a parole plan and of his signature on his conditions of parole. The documents Plaintiff attaches (Doc. 42-1 and 42-2) merely appear to reflect that 1 year of parole will follow the sentence of imprisonment, as state law requires. NMSA § 31-18-15(C); *id.* § 31-21-10(D). Although Plaintiff may have begun serving his 1 year of parole while still in custody, this 1 year period of parole nonetheless followed his sentence of imprisonment, consistent with what the Judgment and Sentence required.

Turning to the second prong of the qualified immunity analysis, Plaintiff does not cite *any* law supporting the claims in the complaint, much less clearly established law. The argument on Doc. 46 at 10-11 regarding the "constitutional right to release while on parole" lacks a citation to a single statute or case. Because Plaintiff did not address either prong of the qualified immunity text and failed to cite any law that clearly establishes any legal principles, the Court finds that Plaintiff has forfeited his opposition to Defendants' assertion of qualified immunity. *See Gutierrez v. Cobos*, 841 F.3d 895, 902-03 (10th Cir. 2016) (enforcing forfeiture of the plaintiff's excessive force claims, without examining the state of the existing case law sua sponte, where "counsel did not make any legal argument in the district court to rebut qualified immunity").

In the interests of justice, however, and as an alternative to its forfeiture finding, the Court has examined the Defendants' arguments and the applicable case law.

As Defendants argue, the Supreme Court has held that a state statute providing for the possibility of parole does not itself create an entitlement to due process. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 9-11 (1979). Instead, the Court looks to the specifics of state law to determine whether a liberty interest protectible by due process has been created. *Id.* at 12 ("whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis"). For example, because "the Nebraska statutes provide that the Board of Parole 'shall' release an inmate unless one of four designated reasons are found, . . . the Supreme Court found that the Nebraska statutory scheme was sufficient to entitle an inmate to some measure of constitutional protection in connection with parole release." *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979).

In 1981, the Tenth Circuit held that the New Mexico parole statute, unlike the Nebraska statute at issue in *Greenholtz*, created no constitutional liberty interest in parole. *Candelaria v. Griffin*, 641 F.2d 868 (10th Cir. 1981). At the time, New Mexico's parole statute provided:

> The (parole) board may release on parole any person confined in any correctional institution . . . when the prisoner gives evidence of having secured gainful employment or satisfactory evidence of self-support, and the board finds in its opinion the prisoner can be released without detriment to himself or to the community.

*Candelaria*, 641 F.2d at 869 (quoting NMSA § 31-21-10(A)) (alterations in original). The Tenth Circuit held that because "New Mexico's parole system contains no 'shall . . . unless' directive to the parole board . . . the system does no more than create a parole system, which in the Supreme Court's view . . . does not establish a liberty interest." *Id.* at 870.

The Court finds that *Candelaria v. Griffin* does not govern the current case because New Mexico's parole statute has been amended since 1981, as Defendant acknowledges. Doc. 42 at 7. It now provides:

> Every person while on parole shall remain in the legal custody of the institution from which the person was released, but shall be subject to the orders of the board. The board shall furnish to each inmate as a prerequisite to release under its supervision a written statement of the conditions of parole that shall be accepted and agreed to by the inmate as evidenced by the inmate's signature affixed to a duplicate copy to be retained in the files of the board. The board shall also require as a prerequisite to release the submission and approval of a parole plan. If an inmate refuses to affix the inmate's signature to the written statement of the conditions of parole or does not have an approved parole plan, the inmate shall not be released and shall remain in the custody of the institution in which the inmate has served the inmate's sentence, excepting parole, until such time as the period of parole the inmate was required to serve, less meritorious deductions, if any, expires, at which time the inmate shall be released from that institution without parole, or until such time that the inmate evidences acceptance and agreement to the conditions of parole as required or receives approval for the inmate's parole plan or both. Time served from the date that an inmate refuses to accept and agree to the conditions of parole or fails to receive approval for the inmate's parole plan shall reduce the period, if any, to be served under parole at a later date. If the district court has ordered that the inmate make restitution to a victim as provided in Section 31-17-1, the board shall include restitution as a condition of parole. The board shall also personally apprise the inmate of the conditions of parole and the inmate's duties relating thereto.

NMSA § 31-21-10(E) (effective July 1, 2009).

This statute might, under some circumstances, create a constitutional liberty interest in being released on parole. Where the version of the statute the Tenth Circuit interpreted used "may," the current statute uses "shall" to describe the duties of the parole board: It *shall* furnish to each inmate as a prerequisite to release under its supervision a written statement of the conditions of parole. It *shall* also require as a prerequisite to release the submission and approval of a parole plan. It *shall* also personally apprise the inmate of the conditions of parole and the inmate's duties relating thereto.

Nonetheless, the Court need not decide in this case whether these provisions create a protected liberty interest because Plaintiff does not allege anyone failed to fulfill a statutory duty relating to parole. The Amended Complaint does not allege that anyone failed to furnish Plaintiff a written statement of the conditions of parole or approve a parole plan for Plaintiff. The Amended Complaint does not allege that Plaintiff signed a written statement of the conditions of parole, which is a statutory prerequisite to release. The Amended Complaint's only contention is that Plaintiff was automatically entitled to release the day his term of parole began. This is incorrect, as explained above, and has no bearing on whether the parole board—or anyone else— failed to take any required actions with respect to Plaintiff's release on parole.

In addition, Plaintiff has cited no provision that places any duties relating to parole on correctional officers. The Amended Complaint does not allege that any individual defendant in this case is a member of the parole board, which would appear to be impossible under New Mexico law. *Cf.* NMSA § 31-21-24(D) ("No member of the [parole] board shall be an official or employee of any other federal, state or local government entity."). It does not allege that any individual defendant is employed by the parole board. It does not allege that any individual defendant bears responsibility for the board's actions or communications about the board's actions. It does not allege a parole plan existed which the individual defendants refused to follow. Under state law, it is the parole board's responsibility to "provide a prisoner or parolee with a written statement of the reason or reasons for denying or revoking parole." *Id.* § 31-21-25(C). If there is a delegation of the parole board's statutory duties to individual correctional officers, Plaintiff does not cite it. Prison officials have the statutory duty to furnish information to the parole board, *id.* § 31-21-13, but there is no allegation in the Amended Complaint that the individual defendants failed to do so in this case.

15

The Amended Complaint describes the individual defendants' duties, but never touches on whether any of them bear responsibility for parole procedures. Defendant Angel Salazar was Plaintiff's case worker. Am. Compl. ¶ 28. She was "employed by CNMCF to, among other tasks, work on inmate cases." *Id.* "[S]he never responded to Plaintiff's requests, and did not report or communicate with the records coordinator regarding good time and release date." *Id.* Defendant Samuel Lujan "was the Acting Records Coordinator." *Id.* ¶ 29. "Among his employment tasks were to prepare good time figuring sheets. Mr. Lujan reported to Plaintiff he had 45 days of good time, then failed to advocate and timely secure Plaintiff's release." *Id.* Defendant "Craig Coal was the Acting Unit Manager." *Id.* ¶ 30. "He refused to respond to Plaintiff's wife's phone calls or concerns about Plaintiff's release date. When contact was made, Coal indicated Plaintiff and his wife would need to get in contact with his case worker, Salazar, who never responded either." *Id.* But there is no indication that any of these defendants had a constitutional or statutory responsibility for decisions, communications, or procedures relating to the parole board and whether or when to release Plaintiff on parole.

In sum, Plaintiff has not overcome Defendants' assertion of qualified immunity under either prong of the qualified immunity test. Even if Plaintiff had a constitutional right to certain parole procedures as of January 16, 2018, Plaintiff does not show that the clearly established law would have put a reasonable correctional officer on notice that procedures for an inmate's parole release is his or her constitutional responsibility. Plaintiff cites no law establishing, for example, that the correctional department officers have a constitutional duty to communicate with Plaintiff about parole. The Court grants the motion to dismiss Count 1 as against the individual defendants Angel Salazar, Samuel Lujan, and Craig Coal.

**II.     Correctional Officers Were Not "Law Enforcement Officers" Under The NMTCA.**

Defendants argue they are entitled to sovereign immunity from the state-law claims in

Counts 1 and 2, because the only applicable waiver is NMSA § 41-4-12, which applies to the

actions of "law enforcement officers." Doc. 42 at 9. Defendants argue that employees of the

Department of Corrections are not law enforcement officers for purposes of the NMTCA. *Id.* at

10. Section 41-4-12 states in relevant part:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978
> does not apply to liability for . . . false imprisonment. . . when caused by law
> enforcement officers while acting within the scope of their duties. For purposes of
> this section, "law enforcement officer" means a public officer vested by law with
> the power to maintain order, to make arrests for crime or to detain persons
> suspected of committing a crime, whether that duty extends to all crimes or is
> limited to specific crimes.

NMSA § 41-4-12 (effective prior to September 19, 2020). Defendants point out that this

definition of law enforcement officer includes a person whose duties involve holding in custody

any person *accused* of a criminal offense, but does not include the duty of holding in custody any

person *convicted* of an offense. Doc. 42 at 10.

In *Anchondo v. Corrections Department*, the New Mexico Supreme Court held that, in

enacting the law-enforcement-officer exception to the Tort Claims Act, "the Legislature intended

to . . . require one to look at what a person actually does, his duties and responsibilities." 1983-

NMSC-051, ¶ 3, 100 N.M. 108. Therefore, "[t]o determine whether positions are of a law

enforcement nature, this Court will look at the character of the principal duties involved, those

duties to which employees devote the majority of their time." *Id.* ¶ 10.

The New Mexico Court of Appeals has found that probation and parole officers are not

"law enforcement officers" because they perform supervisory rather than custodial duties. *Vigil

v. Martinez*, 1992-NMCA-033, ¶ 16-18, 113 N.M. 714, 720-21. Under *Vigil*'s reasoning, the

DOC officers who allegedly showed up to Plaintiff's house looking for parole or probation

17

absconders were not acting as law enforcement officers under the NMTCA. They therefore have sovereign immunity from the claims in Count 2 and the NMTCA does not waive that immunity.

The New Mexico Court of Appeals has also held that "prison guards in the Department of Corrections are not 'law enforcement officers' for purposes of Section 41-4-3(D)." *Callaway v. New Mexico Dep't of Corr.*, 1994-NMCA-049, ¶ 11, 117 N.M. 637, 641. The court reasoned that "the principal duties of prison guards are to hold in custody persons who have already been convicted rather than merely accused of a criminal offense." *Id.* In general, the "maintenance of public order relates to a public not a penitentiary setting." *Id.* Finally, "although prison guards may have the supplemental power to arrest . . . their principal statutory duties" involve "the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts." *Id.* (citing NMSA § 33-2-15). Under this reasoning, the DOC officers who were responsible for supervising Plaintiff in prison between January and June 2018 are not law enforcement officers for the purposes of the NMTCA, and they have sovereign immunity from the claim in Count 1.

"[D]ecisions of the state's intermediate court of appeals . . . are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Amparan v. Lake Powell Car Rental Companies*, 882 F.3d 943, 947-48 (10th Cir. 2018) (internal alterations and quotation marks omitted). The Court has no persuasive data in front of it from which it could disregard the holdings of *Vigil* and *Callaway*. Other judges in this District have reached the same conclusion. *Tanner v. McMurray*, No. 17cv876 JB/KBM, 2018 WL 6050675, at *52 (D.N.M. Nov. 19, 2018); *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1270 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir. 2012).

In addition, Defendants point out that the state legislature recently amended the Tort

Claims Act to include "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of *or convicted of committing a crime*" in the definition of "law enforcement officer." Doc. 42 at 10. "Normally, when the Legislature amends a statute, we presume it intends to change existing law." *Aguilera v. Bd. of Educ. of Hatch Valley Sch*., 2006-NMSC-015, ¶ 19, 139 N.M. 330, 335. This statutory change, then, lends additional support to the Court's conclusion that—prior to the passage of this amendment—correctional officers who supervised inmates convicted of a crime were not law enforcement officers for purposes of the Tort Claims Act.

Defendants argue that this amendment should not be applied to this case retroactively. *Id.* at 11. The Court agrees. "New Mexico law presumes that a statute will operate prospectively unless the legislature clearly indicates that the statute is to be given retrospective effect." *City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque*, 1991-NMCA-015, ¶ 32, 111 N.M. 608, 616. Nothing in the NMTCA amendments indicates the statute is meant to operate retroactively.

Taking a different tact, Plaintiff argues that applying the amendment to this case would not result in "retroactive effect" because the amendment became law on July 8, 2020 and Defendants did not remove this matter to federal court until August 6, 2020. Doc. 46 at 15 n.6. Plaintiff cites no support for the proposition that the Court should look to the law in effect at the time of removal rather than the law in effect at the time of the alleged tort. The law enforcement officers' conduct at issue in this case occurred between January and June 2018. Applying amendments passed two years later would clearly be retroactive, regardless of when Plaintiff filed this lawsuit or when Defendants removed it to federal court.

Based on the law in effect at the time of the alleged tort, the Defendants moving for

dismissal are entitled to sovereign immunity in connection with Counts 1 and 2 and, therefore, the Court dismisses state-law claims in Counts 1 and 2 as to Defendants Central New Mexico Correctional Facility, New Mexico Corrections Department, Angel Salazar, Samuel Lujan, and Craig Coal.

### III.   The Court Does Not Address Claims Which Defendants Have Not Moved To Dismiss.

Count 2 of the Amended Complaint is inartfully pled. This makes it difficult to know whether Plaintiff's claims in Count 2 are based on state tort law, federal constitutional law, or both. Count 2 does not explicitly invoke 42 U.S.C. § 1983. It does state, however, that on September 23, 2019, officers "believed to be SWAT" detained Plaintiff with "no legitimate reason" and alleges that "the seizure was a violation of Plaintiff's Fourth Amendment Constitutional rights" while DOC officers were present. Doc. 34 ¶¶ 36, 39. The Court assumes the reference to "Plaintiff's Fourth Amendment Constitutional rights" invokes the federal constitution because the equivalent right in the New Mexico constitution is located in Article II, section 10.

Defendants did not move to dismiss any federal claims brought in Count 2 (they did not brief this issue in their motion to dismiss at all). Defendants apparently assumed that the count arises only under state law and so did not move to dismiss federal claims of illegal seizure on September 23, 2019 or illegal search of Plaintiff's belongings on January 29, 2019. Even if the lack of specificity in Count 2 contributed to Defendants' failure to address the federal constitutional claims in that count, the Court does not dismiss claims Defendants do not address.

### IV.   Plaintiff Does Not State A Federal Claim Against The Central New Mexico Correctional Facility Or The New Mexico Corrections Department.

In its previous Memorandum Opinion and Order, the Court dismissed the federal constitutional claims against Defendants Central New Mexico Correctional Facility and New

Mexico Corrections Department. Doc. 32 at 9. Defendants argued that, as state agencies, they are not "persons" under § 1983. *Id.* The Court noted that Plaintiff appeared to concede, in his response to the motion to dismiss, that he brought federal constitutional claims only against individual officers. *Id.* Because Plaintiff did not argue otherwise, the Court found that the state entity defendants should be dismissed. *Id.*

The Amended Complaint, however, reasserts constitutional claims against all Defendants, including the state agency defendants. Doc. 34 ¶¶ 27, 31. Defendants specify they are not moving to dismiss these claims because, based on the Court's previous Order, the state entity defendants remain dismissed from this case. Doc. 42 at 5 n.3. Plaintiff appears to concede this. Doc. 46 at 10 n.5.

The Court reiterates its finding in the December 22, 2020 Memorandum Opinion and Order that state agencies and entities are not "persons" under section 1983. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) (state agencies are not "persons" under section 1983 even when the state waives its Eleventh Amendment immunity by voluntarily appearing in federal court after removing a case from state court); *McLaughlin v. Bd. of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1172 (10th Cir. 2000) (same). Accordingly, Defendants Central New Mexico Correctional Facility and the New Mexico Corrections Department remain dismissed despite Plaintiff's inclusion of them in the Amended Complaint.

**V. Plaintiff Identifies No Waiver of Sovereign Immunity Applicable to "Negligence" Standing Alone.**

Defendants move to dismiss Counts 3 and 4 because the Tort Claims Act does not waive sovereign immunity for "negligence" standing alone and Plaintiff fails to allege the commission of any tort for which sovereign immunity is waived. Doc. 42 at 12. Plaintiff does not identify a provision of the NMTCA that waives immunity for "negligence." The Court is well aware that

the NMTCA waives immunity for a variety of negligent acts or omissions by public employees, NMSA § 41-4-5 through § 41-4-13, but all of them are quite specific. As Defendants point out, none of them is a generic waiver of sovereign immunity for "negligence" by any public employee.

Instead of citing a specific waiver and arguing for its applicability, Plaintiff argues at length that the Department itself can be named as a defendant in a Tort Claims Act suit and Plaintiff does not need to name individual correctional officers. Doc. 46 at 13-15. This argument is beside the point. Defendants never argue otherwise. Defendants argue that there is no liability—on the part of the Department or any of its employees—for "negligence standing alone." And Plaintiff simply does not address this argument.

Nor does Plaintiff identify any other applicable waiver of sovereign immunity. Plaintiff refers to the law-enforcement waiver in NMSA § 41-4-12, Doc. 46 at 12, which the Court already found does not apply to correctional officers' alleged torts in this case. In addition, Plaintiff asserts (without analysis) that "allegations of negligence which, if proved, are sufficient to establish breach of a duty under Section 41-4-3(D)." Doc. 46 at 16. Section 41-4-3(D) is the definition of "law enforcement officer" and not itself a waiver of sovereign immunity.

Finally, Plaintiff states that immunity is waived for "a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12." Doc. 46 at 16. But this sentence is the entire extent of Plaintiff's argument on the subject. Again, these sections cover a wide variety of conduct and New Mexico courts have interpreted them at varying degrees of specificity. In the absence of argument or analysis from Plaintiff, the Court will not make arguments on Plaintiff's behalf by exhaustively examining each waiver set forth in the Tort Claims Act from sections 41-4-5 to -12 and independently assessing whether any could apply in

22

this case.

Finally, Defendants argue that Count 5, a stand-alone "count" for "damages," contains no substantive claim. Doc. 42 at 13. This is clearly correct, and Plaintiff does not respond in opposition to this contention.

For the above-stated reasons, the Court grants the moving Defendants' motion to dismiss Counts 3, 4, and 5.

<u>**CONCLUSION**</u>

The Court GRANTS Defendants' Motion to Dismiss the Amended Complaint (Doc. 42). All claims against the Central New Mexico Correctional Facility and the New Mexico Corrections Department are dismissed. All claims in Counts 1, 3, and 4 are dismissed as against Angel Salazar, Samuel Lujan, and Craig Coal. The claims in Counts 2 arising under state law are dismissed as against Angel Salazar, Samuel Lujan, and Craig Coal. Count 5 is dismissed in its entirety.

The remaining claims in the case are: All claims against Victor Turner, and the federal-law claims against Angel Salazar, Samuel Lujan, and Craig Coal in Count 2 of the Amended Complaint. Defendants do not raise any outstanding qualified immunity arguments with respect to the remaining claims; accordingly, the Court refers this case back to Judge Robbenhaar for scheduling and case management.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE